```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------X

ROBERT CASSIAN ANDERSON and,
RODNEY ANDERSON,

                Plaintiffs,              OPINION

        -against-                        07 Civ. 5913 (MGC)

AT&T Corp. and C. Michael Armstrong,


                Defendants.

----------------------------------------X

APPEARANCES:


        KIRBY MCINERNEY LLP
        Attorneys for Plaintiffs

        BY:  Daniel Hume, Esq.
             Steven D. Cohn, Esq.
             825 Third Avenue
             New York, New York 10022



        SIDLEY AUSTIN LLP
        Attorneys for Defendants

        BY:  David F. Graham, Esq.
             One South Dearborn
             Chicago, Illinois 60603

             Matthew J. Warren, Esq.
             1501 K Street, N.W.
             Washington, D.C. 20005
```

1

**CEDARBAUM, J.**

Plaintiffs, two purchasers of AT&T common stock, sue AT&T Corp. and AT&T's former CEO, C. Michael Armstrong, pursuant to Section 10(b) of the Securities Exchange Act of 1934. Plaintiffs claim that defendants failed to disclose AT&T's true financial condition in connection with its wireless "tracking stock" initial public offering ("IPO"). Defendants move for summary judgment on the grounds that AT&T owed no duty to disclose this information to plaintiffs and that Armstrong and AT&T lacked the scienter required by Section 10(b). Because there are material issues of disputed fact, defendants' motion is denied.

## Background

On April 26, 2000, AT&T launched the largest IPO in history for the company's "wireless unit." The stock was intended to "track" the performance of this unit, as opposed to the other, separate, units at AT&T: Business Services, Consumer Services, and Broadband and Internet Services. Plaintiffs did not purchase any tracking stock. Rather, they bought 425,000 shares of AT&T common stock the day after the IPO. They sue Armstrong and AT&T on the theory that statements made in connection with the IPO injured them as buyers of common stock. More specifically, they argue

2

that two documents issued in connection with the IPO–an April 24, 2000 press release and the April 26, 2000 wireless IPO Prospectus–withheld information about the overall health of the company, and, in particular, the disappointing first quarter performance of non-wireless units within AT&T. Plaintiffs contend that cautionary language in the press release, which warned investors not to change their estimates of AT&T's quarterly or annual results based "solely" on the wireless unit, misled common stock investors.

   Plaintiffs further contend that high-ranking AT&T executives, including Armstrong, knew with certainty about AT&T's dismal performance on April 17, 2000, and that AT&T intentionally withheld the information until after the IPO in order to artificially inflate its success.  First quarter results for AT&T were not released until May 2, 2000, substantially later than the average release date for the preceding two decades.  The disclosure significantly affected the price of common stock, which fell seven dollars in one day, the largest decline in fourteen years.  On that day, plaintiffs' stock declined approximately three million dollars in value.

**Discussion**

**I.  Standard of Review**

To support a claim under Section 10(b), plaintiffs must prove the defendants "(1) made misstatements or omissions of material fact; (2) with scienter; (3) in connection with the purchase or sale of securities; (4) upon which plaintiffs relied; and (5) that plaintiffs' reliance was the proximate cause of their injury." In re Int'l Bus. Machs. Corp. Sec. Litig., 163 F.3d 102, 106 (2d Cir. 1998).  Summary judgment should be granted "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c)(2).  A genuine issue of material fact exists when the evidence is "such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S. Ct. 2505, 2510 (1986).  In determining whether the material facts are undisputed, I view the evidence in the light most favorable to the nonmovant.  See United States v. Diebold, Inc., 369 U.S. 654, 655, 82 S. Ct. 993, 994 (1962).

**II. Duty to Disclose**

Defendants argue that, as a matter of law, there was no duty to disclose AT&T's first quarter results before the IPO and that the delayed disclosure was an exercise of business judgment.  It is axiomatic that there is no freestanding duty to divulge material financial information.  As the Second Circuit has emphasized "a corporation is not required to disclose a fact merely because a reasonable investor would very much like to know that fact." **In re Time Warner Inc. Sec. Litig.**, 9 F.3d 259, 267 (2d Cir. 1993).  But the Second Circuit has also recognized that "a duty to update opinions and projections may arise if the original opinions or projections have become misleading as the result of intervening events." Id.

A seller may not take advantage of information known to it but not to shareholders or the investing public at large in connection with the sale of securities.  See Shaw v. Digital Equip. Corp., 82 F.3d 1194, 1202-04 (1st Cir. 1996). Such a duty arises only when the information is likely to have a significant effect on the security in question. Although it is a close question, where, as here, not only the common stock but also the tracking stock experienced a serious decline in value when the first quarter results were released, a reasonable jury could find the information

5

material with respect to the common stock.  To the extent that the two are significantly intertwined, a duty might be owed to plaintiffs who relied on the market to digest information.  But such a determination is premature at the summary judgment stage.  The jury ought to weigh the evidence that the tracking stock reflected the performance of the wireless group and not the company as a whole.

Other authoritative cases take a broad approach to the question of duty in the Section 10(b) context, which is aimed at "any purchaser or seller of stock who lost money as a result of the intentional or reckless dissemination into the marketplace of false or misleading information."  In re Ames Dep't Stores Inc. Stock Litig., 991 F.2d 953, 961-62 (2d Cir. 1993).  See also Fischman v. Raytheon Mfg. Co., 188 F.2d 783, 786-87 (2d Cir. 1951) (common stockholders could sue on prospectus and registration statement for another stock).

### III. Scienter

Defendants also argue that plaintiffs cannot establish scienter on the part of AT&T or Armstrong.  Scienter is quintessentially a jury question.  See Wechsler v. Steinberg, 733 F.2d 1054, 1058-60 (2d Cir. 1984).  Defendants rely on testimony, but the credibility of the deponents is not an undisputed fact.  State of mind is

6

similarly disputed.  A reasonable juror could infer scienter from the circumstances.

## Conclusion

Defendants' remaining arguments have been considered and rejected.  For the foregoing reasons, defendants' motion for summary judgment is denied.

SO ORDERED.

Dated:  New York, New York
        May 3, 2010

                                    S/_____
                                       MIRIAM GOLDMAN CEDARBAUM
                                      United States District Judge